In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-1878

MICHAEL WADE,

*Plaintiff-Appellant,*

*v.*

SOO LINE RAILROAD CORPORATION and
CANADIAN PACIFIC RAILWAY COMPANY,

*Defendants-Appellees.*

GEORGE T. BRUGESS,

*Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 3922—**James B. Zagel**, *Judge.*

ARGUED MAY 23, 2007—DECIDED AUGUST 29, 2007

Before EASTERBROOK, *Chief Judge*, and BAUER and MANION, *Circuit Judges*.

EASTERBROOK, *Chief Judge.* Michael Wade alleged that he was permanently injured while operating a handbrake on the Soo Line Railroad. (The Soo Line is a subsidiary of the Canadian Pacific Railway. It is not clear from the record which company is Wade's employer; because nothing turns on the issue, we refer to both collectively as the Soo Line.) Wade brought this action under the Federal Employees Liability Act, 45 U.S.C. §§ 51–60,

seeking damages for medical expenses, lost wages, and pain and suffering. The district court never reached the merits of Wade's claims, however; it dismissed the suit, with prejudice, as a sanction for misconduct by Wade's lawyer, George Brugess. It also ordered Brugess to pay more than $110,000 to reimburse Soo Line's fees and costs.

Wade was treated for his injuries by Michael R. Treister and Chang Sun Kim, two orthopedic specialists at Treister Orthopedic Services (TOS). Wade listed Dr. Treister as a treating physician in an answer to Soo Line's interrogatories. That made him a potential fact witness, and Soo Line accordingly subpoenaed TOS, seeking its "entire file pertaining to Michael Wade". TOS produced what purported to be its entire file, but at Dr. Kim's deposition Soo Line's attorney Daniel Mohan noticed that Kim's copy of the file was thicker than the one that had been produced in discovery. Mohan examined Kim's file, saw several documents that had not been produced, and requested a copy of the complete file. The attorneys took a 20-minute break. An aide from Kim's office took the file for copying and, when the file was returned, some of the previously missing documents were included in the copy—but two had disappeared from Kim's file and were not in the copy made for Mohan. The record does not show who removed these documents from the file, but we do know that Brugess was at the deposition and that Wade's counsel had the opportunity to control the events.

Soo Line promptly subpoenaed Dr. Kim and all staff members who had been on duty during the deposition, seeking the missing documents. On January 4, 2005, six days after the deposition, TOS faxed the missing documents to Brugess—but not to Soo Line, the party that had subpoenaed them. Brugess sat on them. When a week had passed with no answer to its subpoena, Soo Line filed a motion to compel production (miscaptioned as a motion for a "protective order"). The district court granted this mo-

tion on January 10 and sent the order to TOS and to Brugess on January 13. Brugess did not turn over the documents until January 25, well after the deadline.

Five documents were at issue: three that TOS had not revealed until Dr. Kim's deposition, and two that TOS and Brugess withheld even after Soo Line learned of their existence. These were highly probative records that should have been produced much earlier. The district court called them "smoking guns". One was an intake form on which Wade checked "no" in answer to the questions "Was the condition being treated the result of an accident or injury?" and "Do you feel that another party is responsible for this accident or injury?" Two more of the documents related to an undisclosed physical examination that Dr. Treister performed at the request of Wade's law firm, Hoey & Farina; in one Dr. Treister stated, "I do not on physical examination see any evidence of objective pathology requiring treatment at this time."

The two documents removed from the file during Dr. Kim's deposition were particularly damaging. One was a "collections system detail report" detailing billing activity on Wade's file. It included an entry, signed by Dr. Treister, reading:

> Atty Brugess called, states he is aware that we are just making penny for a dollar billed thru United Health which we have a contract with, he make a proposal to bill him for the balance showing that we did review of record for such $ amt. then he will include that in the settlement or pay us up front for that charge. Asked him for the risk that we might encounter (fraud) in the future. He states it happened so many times, & that is the only way we will get our bills paid in full. He will provide proper documentation like he will request for record review then we charge him & he will pay.

Brugess's proposal was problematic in part because, according to a contract with United Healthcare that TOS produced in discovery, TOS had agreed to accept a reduced rate and not to collect further amounts from anyone else. The document also included a statement that "Patient was referred to TOS by Atty Downes office", which contradicted Wade's statement that he had been referred by a friend.

The other particularly damaging document was a note from Dr. Treister to an employee at TOS. It began:

> George Brugess from Hoey & Farina sent me a disability form to fill out on Michael Wade.
>
> This is a real problem. Can you call him and read him this unofficial note???? I don't think I will have time until late in the week.
>
> I have gone through the chart really carefully.

Then, after summarizing Wade's treatment history at TOS, the note concluded (second ellipses in original):

> Problem here—how do I indicate disability when basically examination is normal and there is no atrophy or any other really objective findings?
>
> . . .
>
> So I just don't think there is anything that I can write down which would be helpful rather than harmful. Does George Brugess have any ideas? I think it is best that I just file the chart and he try to resolve the case. . . I probably cannot get back to him until later in the week, but wanted you to report my thoughts. This note can be staple[d] unofficially to the outside of the chart. It is NOT a report and NOT a progress note.

Once Soo Line finally received copies of these documents, it moved for sanctions pursuant to Fed. R. Civ. P. 37(c)(1).

Soo Line argued, first, that Brugess and his firm made improper payments to TOS to influence its diagnosis of Wade, and, second, that Wade had tried to conceal these damaging documents and, even after being caught, tried to conceal them again and, when their absence was detected once more, tarried in turning them over. The district court concluded that the money was payment for an independent medical examination rather than a kickback, and while "not per se improper", was "certainly an unsavory 'sweetening of the deal.'" The court ruled that, although the payments did not themselves merit sanctions, failure to turn over highly relevant documents justified not only dismissal with prejudice but also an order requiring Brugess to pay Soo Line's fees and costs. In the district court's view, the dismissal would not hurt Wade, because "[g]iven the documents uncovered by Mohan, the grant of summary judgment for Soo Line is almost a foregone conclusion."

The main argument on appeal is that $110,000 is too much. Soo Line sought sanctions on account of Wade's failure to disclose damaging documents as well as the payments to TOS, but it prevailed on the first argument only. Brugess argues that the district court had to "apportion" any sanction between the successful and unsuccessful grounds. *Hensley v. Eckerhart,* 461 U.S. 424 (1983), holds that attorneys' fees awarded pursuant to 42 U.S.C. §1988 must be apportioned: if a plaintiff brings two distinct claims in one lawsuit but prevails on only one, the court must award only the fees incurred in prosecuting the successful claim. *Divane v. Krull Electric Co.,* 319 F.3d 307 (7th Cir. 2003), applies this principle to attorneys' fees awarded as sanctions under Fed. R. Civ. P. 11. A plaintiff who brings distinct claims, one of which is sanctionable, can be ordered to pay attorneys' fees incurred in defending the frivolous claim—but not those incurred in defending non-sanctionable claims. Sanctions in the form of attor-

neys' fees are analogous to damages in a tort case, so the party that misbehaved pays for the injury caused by the misconduct. When a factually independent part of the case is entirely legitimate, there is no justification for extending the sanction to cover that part. See also *Maynard v. Nygren,* 332 F.3d 462, 471 (7th Cir. 2003) (applying the causation principle to attorneys' fees awarded under Rule 37(c)).

It's one thing to distinguish between factually unrelated claims brought in a single suit because the federal rules permit joinder of unrelated claims, and quite another to apply this principle to related accusations of misconduct concerning one claim. Soo Line advanced two theories in support of one goal: dismissal of the litigation. It achieved this goal. Brugess asserts that the multiple grounds on which Soo Line sought sanctions are different "claims" as *Hensley* and *Divane* use that term, but that's not so. A separate "claim" is an argument for additional relief for a distinct wrong.

Soo Line thought that Hoey & Farina was making under-the-table payments to Dr. Treister and TOS; the evidence for this accusation came from the documents TOS and Brugess avoided turning over. The harm caused by Brugess's failure to turn over documents is not readily distinguishable from the harm that would have been caused by side payments to TOS: both would delay resolution of the lawsuit and cause Soo Line to incur unnecessary fees. That the district court saw only one kind of misconduct in the withheld documents does not excuse Wade or Brugess from paying for the harm caused by the misconduct.

This assumes that the entire $110,000 is attributable to the misconduct. That amount was Soo Line's entire cost of defending the case until the entry of the sanctions order, and Wade and Brugess assert that it cannot represent the

actual harm. Indeed, the district court had found that the harm was limited to expenses incurred after the date when the documents should have been handed over. The district court entered three orders concerning the amount of sanctions. The first granted the motion for sanctions, leaving the amount open until Soo Line submitted a statement of its fees and costs. Soo Line did so, and in the second order the court held that Soo Line was entitled to fees and expenses incurred only after January 4, 2005. The district court gave Wade's counsel time to file objections to specific items in Soo Line's requests. Brugess squandered this opportunity, arguing yet again that sanctions were inappropriate but not addressing any of Soo Line's line items. The district court then ordered Brugess to pay all $110,000—a sum that included expenses from before January 4 (when TOS gave him copies) and indeed before they should have been furnished in response to the original discovery request for the medical file. (January 4 was already long past time for disclosure.)

The district court had ruled that Soo Line was not entitled to expenses incurred before January 4, which may explain why Brugess did not object to earlier entries in Soo Line's itemization, though it is hard to fathom why he would have failed to remind the judge that Soo Line had not followed the court's instructions. For its part, Soo Line did not resubmit a list of expenses limited to those incurred after January 4—but then, no one asked it to. Brugess did object to the way some of the expenses had been calculated, and the district court ruled on those objections, but the court never mentioned its 180-degree turn on pre-January 4 expenses. Maybe there is a good explanation: perhaps the court decided that the suit itself was frivolous or vexatious. See *Kapco Manufacturing Co. v. C&O Enterprises, Inc.,* 886 F.2d 1485 (7th Cir. 1989). But the court had rejected these possibilities in the second order, and nothing obvious had happened in the

meantime that might explain the change. An equally plausible explanation is that the judge simply lost track of the need to calculate a subset of the fees. Since we have no way of knowing whether the district court intended to award Soo Line fees for the entire case, and if so what its justification was, this part of the sanctions order must be revisited on remand.

As for the dismissal of the suit: the district court observed that "the dismissed claim appears to have had little merit or chance of success." Wade takes this to mean that the district court reached the merits and concluded that he could not show an injury; he responds that, although the withheld documents may show that he is not entitled to damages for permanent injuries, they do not foreclose the possibility that he might recover for loss during the year in which he now says that he was temporarily disabled. Yet the district court did not reach the merits; it dismissed the case as a sanction for misconduct. The quoted statement was little more than an aside. If Wade has a claim, his remedy now is a malpractice suit against Brugess and his law firm.

The district court recognized that dismissal should not be used lightly. The punishment should fit the crime, so fees and fines—which can be scaled as appropriate—often are the best sanctions. *Maynard, supra*; *Ball v. Chicago,* 2 F.3d 752 (7th Cir. 1993); cf. *Greviskes v. Universities Research Association, Inc.,* 417 F.3d 752 (7th Cir. 2005).

*Maynard* held that dismissal is an appropriate sanction for a violation of Rule 37 only when there is "clear and convincing evidence of willfulness, bad faith or fault", 332 F.3d at 468. We doubt that "clear and convincing" evidence is required; the Supreme Court held in *Grogan v. Garner,* 498 U.S. 279 (1991), that heightened burdens of proof do not apply in civil cases unless a statute says so or the Constitution requires an elevated burden. See also *Herman*

*& MacLean v. Huddleston*, 459 U.S. 375 (1983). Soo Line has not, however, asked us to revisit *Maynard* (which did not discuss the Supreme Court's decisions) and use the preponderance-of-the-evidence standard, perhaps because the evidence of bad faith is manifest. As the district court put it: "If the faxed documents were not enough to get [Brugess's] attention, the point should have been brought home when he received a copy of Defendant Soo Line's motion for a protective order in which Mohan accurately described [the missing documents]."

Wade didn't assert a privilege or even say that the documents had been withheld by mistake. The district court could and did conclude that Brugess (or someone else on the plaintiff's legal team) deliberately concealed documents known to favor the adversary; that's sufficient evidence of bad faith. Attorneys' actions are imputed to their clients, even when those actions cause substantial harm. A litigant bears the risk of errors made by his chosen agent. E.g., *Pioneer Investment Services Co. v. Brunswick Associates L.P.,* 507 U.S. 380, 396–97 (1993); *Johnson v. McBride,* 381 F.3d 587 (7th Cir. 2004); *United States v. 7108 West Grand Avenue,* 15 F.3d 632 (7th Cir. 1994). Sanctions for misconduct are within the discretion of district judges, *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639 (1976); *In re Golant,* 239 F.3d 931 (7th Cir. 2001), and dismissing this case was not an abuse of discretion.

Finally we come to Brugess's argument that he should not have to pay any of Soo Line's fees because he, as an attorney rather than a party, is not liable under Fed. R. Civ. P. 37(c). That rule permits fee shifting when a party fails to make disclosures required by various parts of Fed. R. Civ. P. 26. *Insurance Benefit Administrators, Inc. v. Martin,* 871 F.2d 1354, 1360 (7th Cir. 1989), held that because Rule 37(c) "by its express terms applies only to

parties, and not to attorneys, [ ] it may not be the basis for sanctions against an attorney." Accord, *Maynard,* 332 F.3d at 470. Brugess did not make this argument in the district court, however; had he done so, the judge could have given a different justification for holding him personally liable. Several alternative bases are plausible: the district court might have used its inherent authority to sanction attorneys, see *Chambers v. NASCO, Inc.,* 501 U.S. 32, 49 (1991); *Dotson v. Bravo,* 321 F.3d 663, 667–69 (7th Cir. 2003), or relied on 28 U.S.C. §1927 (unreasonable and vexatious multiplication of proceedings) or Fed. R. Civ. P. 26(g)(3) (false certification of compliance with the discovery rules). Because he never raised the issue, Brugess has forfeited the benefit of appellate review on the issue; at oral argument he also expressly withdrew the argument. So we need not consider the application of Rule 37(c).

A corollary of Brugess's argument, however, is that Wade must pay the fees personally. That argument puts Brugess's interests (and, indirectly, his law firm's) in conflict with his client's, which puts Brugess and his firm on the wrong side of their professional obligations. Local Rule 83.51.7(b) of the Northern District of Illinois provides:

> A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> > (2) the client consents after disclosure.

Accord, Illinois Rule of Professional Conduct 1.7(b). (All of Wade's attorneys are members of the Illinois Bar.)

It is not possible to believe that Brugess's and his firm's representation of Wade "will not be adversely affected" by

their own conflicting interests when Brugess and his firm are making arguments that go *directly* against their client's interests. This issue is zero-sum: if Brugess prevails, the monetary sanction is shifted to Wade. And Brugess conceded at argument that Wade did not consent to the making of an argument that, if accepted, would have saddled him with a $110,000 judgment. His lawyers just ignored the conflict and argued in their own interests.

Maybe Wade could have shifted the expense to Brugess in turn. A lawyer whose misconduct results in sanctions against his client has committed malpractice; if Wade did end up liable on account of Brugess's misconduct, he would have a claim against Brugess for (at least) the amount of the sanctions. (Why make the argument in the first place, then? Does it affect whether Hoey & Farina's malpractice insurer pays?) The possibility that Wade could shift the cost of the sanctions *back* onto Brugess, however, does not mean that Wade has nothing at risk from his lawyers' argument. If Brugess had agreed to indemnify Wade for any sanctions assessed against him (and Brugess were sure to be solvent), then there would be no conflict, but that doesn't seem to have happened. We learned after argument that Wade and Hoey & Farina had negotiated toward a settlement of Wade's possible malpractice claim, but apparently no settlement was reached. For all we know Brugess intends to fight any attempt to collect the monetary sanction from him.

When we asked Brugess at oral argument about the conflict of interest, he noted that Wade had additional representation after the district court's decision. Wade's supplemental lawyer, Robert A. Montgomery, apparently engaged to negotiate toward settlement of Wade's potential malpractice claim, told us by an affidavit filed after argument that Wade had consented to the filing of a joint brief with Brugess. Yet the only lawyers listed on Wade's two briefs are Steven P. Garmisa, George T. Brugess,

Richard A. Haydu, and Frank E. Van Bree, all of Hoey & Farina. Circuit Rule 26.1 requires all attorneys representing a private party to file a disclosure statement giving, among other things, the names of all firms that represented that party in the trial court or are expected to do so in the court of appeals. While four attorneys from Hoey & Farina filed statements under the Rule, none of them listed any other firm. And while the Rule requires that "[e]very attorney for a non-governmental party or amicus curiae . . . must file a statement under this rule", Cir. R. 26.1(a), Montgomery did not file a disclosure statement. Fortunately his role, at last revealed, has not caused a belated recusal.

Montgomery's affidavit stated that he had read the final brief—complete with an argument that would leave Wade personally responsible for any financial sanction—and "did not feel that corrections, deletions, or additions needed to be made." His affidavit does not say that he consented on Wade's behalf to this conflict of interest (or had authority to do so), that he discussed the brief's contents with Wade, or that he thought the brief's arguments to be in Wade's best interests. Montgomery's failure to look after his client's welfare, however, does not excuse Brugess's and his partners' violation of their duty to place their client's well-being above their own. His negligence doesn't justify their misconduct.

The Northern District of Illinois has specific rules for the practice of law. This court has not enacted similarly detailed regulations, but Fed. R. App. P. 46 permits us to discipline an attorney for violation of any court rule or for any other conduct unbecoming a member of the bar. E.g., *In re Bagdade,* 334 F.3d 568 (7th Cir. 2003); cf. *United States v. Johnson,* 327 F.3d 554, 559–61 (7th Cir. 2003) (discussing a court's authority to control admission to its bar and discipline attorneys who appear before it). This authority to regulate membership in the court's bar

protects litigants from careless or unethical acts by their attorneys. See *In re Cook,* 49 F.3d 263 (7th Cir. 1995). Arguments designed to protect the attorney at the expense of the client are precisely the sort of acts that invite discipline. An attempt to defraud the court (and the defendant) by withholding vital documents has been compounded by an effort to make the client bear the consequences.

The judgment of the district court is affirmed except for the amount of fees and costs awarded to Soo Line; that portion of the judgment is vacated and remanded for recalculation. Wade's attorneys, Steven P. Garmisa, George T. Brugess, Richard A. Haydu, Frank E. Van Bree, and Robert A. Montgomery, are ordered to show cause by September 19, 2007 why they should not be disciplined by this court pursuant to Fed. R. App. P. 46(b)–(c) for conduct unbecoming members of the bar. We will forward a copy of this opinion to the Northern District of Illinois and the Attorney Registration and Disciplinary Commission of Illinois for such consideration as they deem appropriate.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*