In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1753

ARMANDO RAMIREZ,

*Plaintiff-Appellant*,

*v.*

T&H LEMONT, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-CV-01279 — **James B. Zagel**, *Judge.*

ARGUED NOVEMBER 1, 2016 — DECIDED DECEMBER 30, 2016

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Upon finding that plaintiff
Armando Ramirez had offered a witness money in exchange
for his favorable testimony, the district court dismissed
Ramirez's suit with prejudice. Ramirez appeals, contending
that the district court erred in finding that he engaged in

witness tampering and that it abused its discretion in dismissing the case with prejudice as a sanction. We affirm.

## I.

Ramirez's amended complaint alleges that his former employer, T&H Lemont, Inc., subjected him to discriminatory working conditions and a hostile work environment based on his national original (Ramirez is Hispanic and was born in Mexico) and then fired him in retaliation for reporting the harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) & –3(a). Nearly three years into the litigation, with discovery essentially concluded Ramirez and his counsel had not located any witnesses to corroborate his allegations, which were vigorously denied by the defendant, and his attorney was seeking leave to withdraw from the case. But at the eleventh hour, Ramirez located three witnesses, all former T&H Lemont employees who had worked with Ramirez in the company's machine shop, willing to give testimony on his behalf. Ramirez's counsel abandoned his motion to withdraw, the district court ordered that the new witnesses be deposed, and all three of those witnesses —Francisco Hernandez, Miguel Velasquez, and Santiago Villagrana—were serially deposed on the same day. Each testified in substance that he had observed ways in which two T&H Lemont managerial and supervisory employees had purposely made life difficult for Ramirez at the firm; all three testified that they had witnessed one of those supervisors refer to Ramirez as a burro or donkey on one or more occasions.

Three months after these depositions took place, as defense counsel was seeking to re-depose Villagrana, Villagrana sent

a text to Ramirez's counsel asking for a letter "saying what percent I will receive when the case is settled." R. 59–1 at 2. Ramirez's counsel reported the text to defense counsel. As it turned out, on the same day that Villagrana texted Ramirez's lawyer, he also contacted a T&H Lemont employee informing him that he and the other two witnesses were no longer supporting Ramirez and that he (Villagrana) was willing to testify for T&H Lemont if he could get his old job back.

At the defendant's request, the district court convened an evidentiary hearing in order to determine whether any witness had provided false deposition testimony in the case and, if so, whether anyone else was involved in that false testimony.[1] Two witnesses testified in person at that hearing: Oberlin Luis, the T&H Lemont employee whom Villagrana had contacted to report that he was willing to testify on the company's behalf; and Francisco Hernandez, one of the other witnesses who had given deposition testimony supporting Ramirez. A third witness, Villagrana, was subsequently deposed in California, where he was then living. His deposition was videotaped, and a transcript of his testimony was submitted to the court after the hearing.[2] Villagrana testified in substance that Ramirez had offered him money in exchange for his favorable testimony; that he accepted the offer because he was in urgent need of

---

[1]  As part of the inquiry, the district court ordered Ramirez and all three of his witnesses to submit their cell phones for forensic imaging. So far as the record reveals, that examination produced no evidence relevant to the alleged witness tampering.

[2]  The record does not make clear whether the district court reviewed only the written transcript of Villagrana's testimony or also the video recording.

money; that he had not observed the harassment of which Ramirez was complaining; that all three of the belatedly-located witnesses had met with Ramirez before they were deposed in May and discussed using the word "donkey"; and that he had testified falsely at his deposition in exchange for the money Ramirez had offered him. Hernandez denied that anyone had offered him money in exchange for his deposition testimony. He did acknowledge, however, that he and the other two witnesses had met with Ramirez twice before they were deposed. During the first meeting, Ramirez had asked them whether they would be willing to testify on his behalf, and during both meetings, they had discussed what their testimony would be. There were certain inconsistencies in Hernandez's testimony on other points that would lead the district court to observe that his credibility appeared "questionable" at times. App. 102. Finally, Luis recounted the offer he had received from Villagrana to testify on the company's behalf.

Based on this testimony, the district court, on T&H Lemont's motion, dismissed the case with prejudice. After summarizing the testimony presented to him, the district judge observed:

> Throughout the evidentiary hearing, counsel for Plaintiff has been forthcoming and cooperative—I am convinced that he played no role in Plaintiff's misconduct. Because I have found clear and convincing evidence of witness tampering, I am dismissing this case with prejudice to sanction Plaintiff.

R. 80 at 2. The court later denied Ramirez's request, pursuant
to Fed. R. Civ. P. 59(e), to reconsider the dismissal. R. 84.

## II.

Ramirez contends on appeal that the record does not
support a finding by clear and convincing evidence that he
engaged in witness tampering and that the district court
abused its discretion in dismissing the case with prejudice as
a sanction for that misconduct. Villagrana's testimony that
Ramirez had offered him money in exchange for his testimony
was not credible, Ramirez contends, in view of Luis's
testimony that Villagrana had offered to testify for the
defendant if he could get his job back and the conflicts between
Villagrana's testimony and Hernandez's testimony. And
dismissing the suit with prejudice was an inappropriate
sanction, Ramirez argues, when it otherwise appears he may
have a meritorious claim of employment discrimination.

T&H Lemont asked the district court to dismiss the case
with prejudice pursuant to Federal Rule of Civil Procedure 37
and the court's inherent authority to sanction misconduct.
When it granted that request and dismissed the case, the
district court did not specify which source of authority it was
relying upon. Either would appear to support the court's
decision. Rule 37(b)(2)(A)(v) authorizes a range of sanctions,
including the dismissal of a suit, for a party's failure to comply
with the court's discovery orders[3]; and Rule 37(a)(4) treats an

---

[3]   We have signaled a willingness to broadly construe what constitutes a
court order for purposes of imposing sanctions under Rule 37. *See Brandt v.*
(continued...)

evasive and incomplete answer in discovery as equivalent to no answer, and thus a failure to comply with court-ordered discovery. We have construed the sanctioning power conveyed by Rule 37 to extend to instances of a party hiding evidence and lying in his deposition. *Negrete v. Nat'l R.R. Passenger Corp.*, 547 F.3d 721, 723–24 (7th Cir. 2008). We can think of no reason why the power would not also extend to a party soliciting a witness to lie at his court-ordered deposition. *See, e.g., Quela v. Payco-Gen. Am. Credits, Inc.*, No. 99 C 1904, 2000 WL 656681 (N.D. Ill. May 18, 2000), *j. aff'd on other grounds*, *Hakim v. Payco-Gen. Am. Credits, Inc.*, 272 F.3d 932 (7th Cir. 2001) . Apart from the discovery rule, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50, 111 S. Ct. 2123, 2134–36 (1991). Thus, as we noted in *Secrease v. Western & Southern Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015), "[d]ismissal [pursuant to the court's inherent authority] can be appropriate when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false."

The exercise of either power requires the court to find that the responsible party acted or failed to act with a degree of culpability that exceeds simple inadvertence or mistake before

---

[3] (…continued)
*Vulcan, Inc.*, 30 F.3d 752, 756 n. 7 (7th Cir. 1994) (collecting cases); *Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 164 (7th Cir. 1994) (oral directive from court to provide discovery sufficient).

it may choose dismissal as a sanction for discovery violations. Any sanctions imposed pursuant to the court's inherent authority must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith. *See Chambers*, 501 U.S. at 50, 111 S. Ct. at 2135–36; *Secrease*, 800 F.3d at 401; *Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620, 626 (7th Cir. 2015) (negligence is insufficient to support a finding of bad faith). Rule 37 itself does not specify a requisite mental state, but in *Societe Internacionale pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S. Ct. 1087, 1096 (1958), the Supreme Court concluded that Rule 37 should not be construed to authorize dismissal of an action when a plaintiff's failure to comply with his discovery obligations was due to his inability to comply rather than his "willfulness, bad faith, or any fault." *See also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640, 96 S. Ct. 2778, 2779 (1976) (per curiam) (reaffirming that holding). Fault, in contrast to wilfulness or bad faith, does not require a showing of intent, but presumes that the sanctioned party was guilty of "extraordinarily poor judgment" or "gross negligence" rather than mere "mistake or carelessness." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) ("[f]ault in this context suggests objectively unreasonable behavior"); *see also e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642–43 (7th Cir. 2011) (distinguishing degree of fault necessary to support dismissal or default from that necessary to support lesser sanctions).

Our decision in *Maynard v. Nygren*, 332 F.3d 462, 468 (7th Cir. 2003), held that clear and convincing evidence is required

in order to dismiss a case as a sanction for discovery-related misconduct pursuant to Rule 37. Citing a series of cases from other circuits (most of which dealt with sanctions imposed for conduct amounting to fraud on the court rather than abuse of the discovery process) we reasoned that "considering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith, or fault before dismissing a case." *Id.* By its own terms, that rationale presumably would apply to a dismissal imposed pursuant to the court's inherent authority, as the severity of the sanction remains the same. *See Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498–99 (7th Cir. 2008).

But we have questioned *Maynard*'s holding on multiple occasions. *See Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) ("We doubt that 'clear and convincing' evidence is required" to establish a wilful violation of Rule 37); *Ridge Chrysler Jeep, LLC v. DaimlerChrysler Fin. Servs. Americas LLC*, 516 F.3d 623, 625–26 (7th Cir. 2008) (renewing *Wade*'s criticism of *Maynard*); *Ty*, 517 F.3d at 498–99 (considering appropriate standard for sanctions imposed for witness tampering pursuant to court's inherent authority and noting that *Maynard*'s soundness as to standard for Rule 37 sanctions had been questioned); *see also Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 n.8 (7th Cir. 2011) (noting "some discussion" as to whether finding of wilfulness for purposes of Rule 37 dismissal must be based on clear and convincing evidence, but finding it unnecessary to address it); *Watkins v. Nielsen*, 405 F. App'x 42, 44 (7th Cir. 2010) (nonprecedential decision) ("We have not resolved definitively whether a finding of wilfulness must be premised on clear and convincing evidence or simply

a preponderance."); *Negrete*, 547 F.3d at 724 n.1 ("[t]here is no need to resolve the standard here because the evidence was clear and convincing"). We believe it is time to put an end to the questions and make clear that a preponderance of the evidence is sufficient.

*Maynard* failed to consider "the presumption that the burden of proof in federal civil cases is proof by a preponderance of the evidence," *Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 507 (7th Cir. 2007), a presumption reinforced by the Supreme Court's repeated rejection of more demanding evidentiary burdens in the civil setting. *See, e.g., Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1934 (2016) (rejecting requirement that egregious patent infringement behavior warranting enhanced damages under 35 U.S.C. § 284 be proved by clear and convincing evidence); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1758 (2014) (rejecting requirement that patent litigant must establish by clear and convincing evidence that case is sufficiently "exceptional" as to warrant fee shifting under 35 U.S.C. § 285); *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S. Ct. 654, 659 (1991) (rejecting clear-and-convincing standard for non-dischargeability of debts in bankruptcy pursuant to 11 U.S.C. § 523); *Price Waterhouse v. Hopkins*, 490 U.S. 228, 253–54, 109 S. Ct. 1775, 1792–93 (1989) (rejecting requirement in Title VII case that employer with mixed motives prove by clear and convincing evidence that it would have made same decision absent discriminatory motive); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387–90, 103 S. Ct. 683, 690–92 (1983) (rejecting clear-and-convincing standard for civil claims alleging securities fraud in violation of section 10(b) of the

Securities Exchange Act of 1934, 15 U.S.C. §78j(b)). Our decisions in *Ridge Chrysler Jeep*, 516 F.3d at 625–26, and *Wade*, 500 F.3d at 564, both noted that *Maynard* omitted any mention of such precedents and of the Supreme Court's rationale as to heightened burdens of proof.

As *Grogan* and *Huddleston* make clear, unless the governing statute (or in this case, the rule) specifies a higher burden, or the Constitution demands a higher burden because of the nature of the individual interests at stake, proof by a preponderance of the evidence will suffice. *Huddleston*, 459 U.S. at 389, 103 S. Ct. at 691; *Grogan*, 498 U.S. at 296, 111 S. Ct. at 659. Rule 37 is silent as to a standard for sanctions; and, of course, the inherent authority to impose sanctions for litigation misconduct is judicially derived and specifies no particular standard of proof. *Maynard* implies that dismissal of a suit as a sanction for discovery misconduct implicates rights that warrant a more demanding standard than a preponderance of evidence. But it makes no case for why that is so. *Huddleston* explains that the standard of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." 459 U.S. at 389, 103 S. Ct. at 691 (quoting *Addington v. Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 1808 (1979)). *Price Waterhouse* adds that "[e]xceptions to [the preponderance standard in civil cases] are uncommon, and in fact are ordinarily recognized only when the government seeks to take unusual coercive action—action more dramatic than entering an award of money damages or other conventional relief—against an individual." 490 U.S. at 253, 109 S. Ct. at 1792. To illustrate that point, *Price Waterhouse* and *Huddleston* collect cases involving the termination of

parental rights, involuntary commitment, deportation, and denaturalization as examples of proceedings in which particularly important individual interests are at stake, such that the Constitution warrants a higher burden of proof (namely, clear and convincing evidence). *Id.*, 109 S. Ct. at 1792; *Huddleston*, 459 U.S. at 389, 103 S. Ct. at 691; *see also Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1302–03 (7th Cir. 1987). "By contrast," *Huddleston* proceeds, the "imposition of even severe civil sanctions that do not implicate such interests has been permitted after proof by a preponderance of the evidence." *Id.* at 389–90, 103 S. Ct. at 691 (citing *United States v. Regan*, 232 U.S. 37, 48–49, 34 S. Ct. 213, 217 (1914) (proof by preponderance of evidence suffices in civil suits that entail proof of acts exposing a party to criminal prosecution)).

The interests implicated by the dismissal of a suit as a sanction for misconduct occurring in civil litigation (including discovery) are not so important as to demand that the facts underlying the dismissal be established by clear and convincing evidence. Certainly a dismissal of the suit with prejudice constitutes a severe sanction; but as *Huddleston* indicates, that alone does not warrant a standard of proof more burdensome than a preponderance of the evidence. The preponderance standard allocates the risk of error more or less equally between Ramirez and T&H Lemont as parties to the suit. *See Huddleston*, 459 U.S. at 390, 103 S. Ct. at 691 (citing *Addington*, 441 U.S. at 423, 99 S. Ct. at 1808); *Yi*, 480 F.3d at 507. As in most civil suits between private parties, what is at stake in this suit is money (Ramirez did not ask for equitable relief), and thus a factual error in the determination of the merits of the case exposes both parties to the same type and magnitude

of risk—the loss or gain of the damages that Ramirez seeks. The same is true with respect to the imposition of sanctions. Nothing about the nature of sanctions in a civil case places one party or the other in a unique position: either party may be sanctioned for its misconduct, and either might lose the right to present its case if the court decides to enter an adverse judgment as a sanction, as occurred here. (Rule 37(b)(2)(A)(v) and (vi) authorizes both the dismissal of the action and the entry of a default judgment against the offending plaintiff or defendant; and the court's inherent power to sanction misconduct is likewise symmetrical, *see Secrease*, 800 F.3d at 401.) Even if the court decides to impose a lesser, issue-related sanction, such as excluding the testimony of a particular witness (*see* Rule 37(b)(2)(A)(ii)), the sanction may so hobble the sanctioned party that the result of the case is foreordained. At all events, the sanctioned party does not stand to forfeit more than he might have lost were the case resolved against him on the merits. Ramirez has been deprived of the opportunity to vindicate his rights under Title VII, and those rights are highly important, we agree. But, important as they are, the loss of the opportunity to vindicate those rights in a civil suit against one's employer is not of the same constitutional magnitude as the liberty interests at stake in proceedings involving the termination of parental rights or involuntary commitment to an institution for psychiatric care, for example. *Cf. Addington*, 441 U.S. at 427, 99 S. Ct. at 1810 ("The individual [named in a civil commitment petition] should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.").

The gravity of dismissing a suit with prejudice based on litigation misconduct certainly warrants the careful exercise of the court's discretion. But that is a matter distinct from the standard of proof by which the underlying facts must be proven. *See Ty*, 517 F.3d at 499–500. Given that the facts bearing on the merits of a Title VII suit need only be proven by a preponderance of the evidence, *see Price Waterhouse*, 490 U.S. at 253, 109 S. Ct. at 1792, we see no reason why the facts bearing on whether sanctionable misconduct has occurred during the course of such a suit that warrants the entry of judgment must be established by clear and convincing evidence. *Huddleston* recognizes that any standard other than a preponderance of the evidence "expresses a preference for one side's interests." 459 U.S. at 390, 103 S. Ct. at 691. Like any other civil litigant, Ramirez is obliged under Rule 37 to comply with the court's discovery orders and, more broadly, to comport himself appropriately before the court and refrain from attempts to deceive his opponent and to perpetrate a fraud on the court. His adversary, T&H Lemont, shares the same obligations and faces the same penalties should it ignore them. The preponderance standard appropriately reflects the mutuality of the parties' obligations; the clear-and-convincing standard, by contrast, would reflect an unwarranted preference for one party over the other.

We recognize that our decision places us into conflict with the decisions of certain other circuits, a sampling of which we cited and followed in *Maynard*. 332 F.3d at 468 (collecting cases). The case for the clear and convincing standard adopted in those cases is best articulated by *Shepherd v. Am. Broadcasting Cos.*, 62 F.3d 1469, 1476–78 (D.C. Cir. 1995), which concluded

that a preponderance of evidence was insufficient to support a dismissal of the case pursuant to the court's inherent authority as a sanction for discovery-related misconduct. Focusing on the punitive aspect of inherent-authority sanctions, the court likened the sanction of dismissal or default judgment to civil contempt, a sanction designed to coerce a recalcitrant litigant into compliance with the court's orders, and reasoned that the two types of sanctions should be governed by the same evidentiary standard. *Id.* at 1477. It is true enough that there is "[a] large body of case law hold[ing] that civil contempt must be proved by clear and convincing evidence." *S.E.C. v. First Choice Mgmt. Servs., Inc.*, 678 F.3d 538, 544 (7th Cir. 2012) (collecting cases). But we have pointed out that this very line of authority itself is "in tension with the Supreme Court's insistence on a presumption in favor of the less onerous standard of preponderance of the evidence in federal civil cases." *Id.*

*Shepherd* added that a heightened standard is appropriate for inherent-power sanctions because the predicate misconduct for such sanctions typically involves some type of fraudulent or quasi-criminal misconduct. 62 F.3d at 1477. Yet the Supreme Court has dispelled the notion that a finding of fraud in civil litigation invariably demands clear and convincing evidence: *Huddleston* adopted the preponderance standard for civil claims of securities fraud, 459 U.S. at 388–90, 103 S. Ct. at 690–92, and *Grogan* held that a creditor need only show by a preponderance of evidence that a claim was incurred through fraud in order to establish that the claim is not dischargeable in bankruptcy, 498 U.S. at 286–87, 111 S. Ct. at 659. Both decisions acknowledged the very tradition of requiring that

fraud be proved by clear and convincing evidence that *Shepherd* invoked, *see Huddleston*, 549 U.S. at 388–89, 103 S. Ct. at 690–91; *Grogan*, 498 U.S. at 288, 111 S. Ct. at 660, and yet both concluded that the particular interests implicated by a finding of fraud in those cases were not sufficient to overcome the presumption that the preponderance standard will govern civil litigation.[4] *See also Liquid Air*, 834 F.2d at 1302-03 (rejecting clear and convincing standard for civil claims under Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 & 1964, notwithstanding fact that certain predicate acts of racketeering involve fraud).

What is patently clear from the Court's decisions in *Huddleston* and *Grogan* is that labels matter less than substance. Simply because a sanction is premised on conduct that can be described as fraudulent does not mean that the court must by rote adopt an evidentiary standard historically associated with fraud claims. The Supreme Court instead directs us to focus on the pragmatic implications of the sanctions decision and to consider whether they transform a civil case that is otherwise about money into one that may implicate much more substantial interests. In that vein, our decision in *Ty* recognized the pragmatic differences between a civil merits judgment deeming a party guilty of fraud and a sanction imposed by the court for a fraud on the court committed in the course of the

---

[4]  *Huddleston* noted that the clear and convincing standard was adopted at common law for fraud claims in part out of a fear that such claims could be easily concocted. 459 U.S. at 388 n.27, 103 S. Ct. at 690 n.27. That concern is not present here, when a court is called upon to determine whether a party has engaged in fraudulent conduct during the litigation over which the court is presiding.

litigation. 517 F.3d at 499. We have, in this case, already explained at some length why the interests at stake in the court's decision to dismiss the suit as a sanction for witness tampering are not sufficient to overcome the presumption that the relevant facts will be determined by a preponderance of the evidence. And as with use of the term "fraud," affixing the "quasi-criminal" label to the sanctioned conduct does not alter the calculus. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 491, 105 S. Ct. 3275, 3282 (1985) ("In a number of settings, conduct that can be punished as criminal only upon proof beyond a reasonable doubt will support civil sanctions under a preponderance standard.") (collecting cases); *see also Huddleston*, 459 U.S. at 390, 103 S. Ct. at 691 (citing *Regan*, 232 U.S. at 48-49, 34 S. Ct. at 217, for the proposition that, in civil litigation, preponderance is sufficient as proof of acts that expose a party to criminal prosecution); *Liquid Air*, 834 F.2d at 1302-03 (civil RICO claims are subject to proof by preponderance of evidence notwithstanding that predicate acts of racketeering are criminal in nature: "A civil RICO defendant does not face imprisonment, nor does the defendant suffer the collateral consequences associated with conviction of a criminal offense."). Regardless of whether the litigation misconduct at issue is characterized by fraud, bad faith, fault, or quasi-criminal misconduct, the case remains a civil suit between private litigants, and what is at stake for Ramirez is the loss of the opportunity to win money damages from his former employer. *See Kunkel v. Com'r of Internal Revenue*, 821 F.3d 908, 910 (7th Cir. 2016) (Supreme Court's jurisprudence indicates that "in civil litigation over money, the appropriate standard is the preponderance of the evidence"); *Liquid Air*, 834

F.2d at 1302 (clear and convincing standard "is used in civil cases in which more is at stake than mere loss of money").

Because our holding today conflicts with our decision in *Maynard* and with like decisions of other circuits as to the applicable evidentiary standard, this opinion was circulated to all active judges pursuant to Circuit Rule 40(e). No judge in active service wished to hear this case en banc. Our decision in *Maynard* is overruled in that respect. In civil cases, the facts underlying a district court's decision to dismiss the suit or enter a default judgment as a sanction under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence.

The evidence presented to the district court was sufficient to support a finding by the preponderance of the evidence that Ramirez engaged in witness tampering. Villagrana testified that Ramirez offered him money in exchange for favorable testimony, that he accepted the offer due to a variety of financial hardships he faced, that he discussed with Ramirez (and the other two witnesses) what his testimony would be, that the testimony he gave in exchange for money Ramirez offered was false, and that, in truth, he had never observed any discrimination against Ramirez while in T&H Lemont's employ. The district court obviously credited Villagrana's testimony, and it is worth noting that no other witness (including Ramirez, who chose not to testify) disputed his account. It is true that Hernandez denied that *he* was bribed, but that does not undercut the notion that Villagrana was. And, of course, the district court indicated that portions of Hernandez's testimony were questionable. At the same time, Hernandez did corroborate Villagrana's testimony in part by

confirming that the three witnesses had met and discussed their testimony with Ramirez in advance of their depositions. It is also true that, according to Luis, Villagrana offered to testify for T&H Lemont if he could get his job back. That testimony raises the possibility that Villagrana was a mercenary witness whose testimony was for sale to the highest bidder (he himself acknowledged that he agreed to testify for Ramirez because he was in dire straits financially), and it permitted, but did not compel, the district court to discredit his testimony. But the court chose instead to credit Villagrana, and we have no ground on which to second-guess its credibility determination.[5] Having credited Villagrana's testimony that he was offered money to testify (falsely) for Ramirez, the district court was on solid ground in finding by a preponderance of the evidence that Ramirez had engaged in witness tampering.

In light of that finding, the court certainly did not abuse its discretion in dismissing the case with prejudice rather than imposing a lesser sanction. The court considered the possibility—indeed, it expressly assumed—that Ramirez may have had a meritorious case of employment discrimination, and that dismissal would foreclose Ramirez from pursuing relief for that injury. *See* R. 73 at 12-14. But witness tampering is among the most grave abuses of the judicial process, and as such it warrants a substantial sanction. *See*, *e.g.*, *Secrease*, 800 F.3d at 402 ("falsifying evidence to secure a court victory undermines the most basic foundations of our judicial

---

[5]   No issue is presented as to the procedure the district court followed in making its factual findings, including the manner in which Villagrana's testimony was presented to the court.

system"); *Ty*, 517 F.3d at 498 ("[t]rying to improperly influence a witness is fraud on the court and on the opposing party"). Crediting Villagrana's account, Ramirez made a calculated effort to bolster his floundering case by offering payment to a witness to support his allegations of employment discrimination when the witness had, in fact, observed no such discrimination. Dismissing the case with prejudice is an entirely reasonable response to such a deliberate attempt to deceive the court.

## III.

Finding no clear error in the district court's finding that Ramirez engaged in witness tampering and no abuse of discretion in the court's decision to dismiss the case with prejudice as a sanction, we AFFIRM the judgment.