In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1938

CORDELL SANDERS,

*Plaintiff-Appellant,*

*v.*

MICHAEL MELVIN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 16-cv-1366-JBM — **Joe Billy McDade**, *Judge.*

ARGUED OCTOBER 4, 2017 — DECIDED OCTOBER 17, 2017

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Cordell Sanders has been in solitary confinement at Pontiac Correctional Center for eight years, and the prison plans to keep him there for another ten. He has been diagnosed with intermittent explosive disorder, schizoaffective disorder, and other conditions that make him dangerous to others when allowed greater liberty. But Sanders alleges in this suit under 42 U.S.C. §1983 that, although his confinement may protect guards and other prisoners, the

isolation, heat, and restricted air flow in solitary confinement harm him by aggravating both his psychological problems and his asthma. He contends that the conditions of his confinement—if not the fact of long-term solitary confinement under *any* conditions—violate the Constitution.

The filing fee for initiating litigation in federal court is $400. Contending that he does not have this much money, Sanders asked for permission to litigate *in forma pauperis*, a status that for a prisoner means payment over time rather than in advance. See 28 U.S.C. §1915(b). But there is an exception:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g). Judges refer to this as the three-strikes rule. See *Bruce v. Samuels*, 136 S. Ct. 627 (2016). Sanders concedes that at least three of his prior suits or appeals have been dismissed as frivolous, malicious, or failing to state a claim. The district court held that he therefore must pay $400 to pursue the current suit. 2017 U.S. Dist. LEXIS 41026 (C.D. Ill. Mar. 22, 2017). He did not pay, the suit was dismissed, and he appeals from that final decision.

Sanders maintains that asthma and a deteriorating mental state satisfy the exception to the exception: a "prisoner … under imminent danger of serious physical injury" may litigate *in forma pauperis* no matter how many strikes he has. Mental deterioration, however, is a psychological rather than

a physical problem. Physical problems can cause psychological ones, and the reverse, but the statute supposes that it is possible to distinguish them. A claim of long-term psychological deterioration is on the psychological side of the line. Prisoners facing long-term psychological problems can save up during that long term and pay the filing fee.

Sanders's contention that heat and restricted ventilation aggravate his asthma alleges a risk of physical injury, but not an "imminent" one—and a "struggle to breathe", which Sanders alleges, is a normal incident of asthma rather than a "serious" incremental harm. Many risks, for many people (including asthmatics), never come to pass or turn out not to be serious; Sanders has not offered any reason to think that serious physical injury from asthma is "imminent". If fears about the future made for an "imminent danger of serious physical injury", the statute would not serve to curtail litigation by those who have demonstrated a propensity to make baseless or malicious claims. Observations about the general dangers of prison life therefore do not suffice. Cf. *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015).

But Sanders advances a stronger contention: that his mental condition (the prison itself classifies Sanders as "seriously mentally ill") disposes him to self-harm. He asserts that he has twice tried to commit suicide and at least once engaged in self-mutilation. According to his complaint, the mental-health staff at Pontiac ignores the problems of inmates in solitary confinement unless they engage in self-harm. Cutting off an ear or other self-mutilation is a form of physical injury; that the would-be plaintiff inflicts the injury himself, and does so because of mental problems, does not make the harm less "physical" or less "serious." See *Rasho v.*

*Elyea*, 856 F.3d 469, 477–78 (7th Cir. 2017). That Sanders has attempted self-harm multiple times lends support to his allegation that a future attempt is "imminent" unless he is released from solitary or allowed mental-health care. Courts don't accept allegations of danger uncritically. *Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010); *Ciarpaglini v. Saini*, 352 F.3d 328, 330–31 (7th Cir. 2003). But Sanders's history, coupled with the prison's diagnosis of his condition, makes his allegations plausible. And plausibility is enough in a pleading. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Nonetheless, the district court dismissed the allegations out of hand, stating they are "self-serving." Which they are. *Everything* a litigant says in support of a claim is self-serving, whether the statement comes in a complaint, an affidavit, a deposition, or a trial. Yet self-serving statements are not necessarily false; they may be put to the test before being accepted, but they cannot be ignored. Our opinion in *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013), recounts the circuit's flirtation with a doctrine that allows judges to disregard self-serving statements, and it overrules any precedents that so much as hinted in that direction. It is dismaying to see plausible allegations labeled "self-serving" and then swept aside after *Hill* and its predecessors such as *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003).

Having called Sanders's allegations self-serving, the district court added that they amount to a threat to engage in volitional harm. How much control over his actions a mentally ill person such as Sanders possesses may be a difficult medical, philosophical, or religious question that is not suited to summary resolution, but we assume for current pur-

poses that he exercises at least some. That assumption does not support the district court's decision, however.

The court assumed that volitional harm cannot be "imminent danger of serious physical injury." Suppose a prisoner who has three or more strikes files a new suit protesting the absence of a tennis court and adds: "If you do not allow me to proceed *in forma pauperis*, I will prick my finger the very day you issue your decision; and as that would be imminent physical injury, you must allow me to proceed without prepaying the $400 fee." Permitting such an attempt at manipulation would effectively blot §1915(g) out of the United States Code.

But it does not follow that *no* volitional conduct satisfies the statute. Suppose a prisoner alleges that a guard has placed one of his fingers in a vise and turned the handle, causing him anguishing pain but no physical harm. A statement along the lines of "if this goes on for another week, I will cut off the finger as the only way to get relief" would identify imminent physical harm. The threat of self-mutilation would not be a ploy to avoid an unwelcome statutory rule. It would be a means of mitigating damages.

When the prospect of self-harm is a consequence of the condition that prompted the suit, a court should treat the allegation (if true) as imminent physical injury. And this is the kind of allegation Sanders has advanced. He contends that solitary confinement not only is injurious by itself but also causes prisoners to lose the benefit of mental-health care, and that only self-mutilation (or a credible threat of self-mutilation) restores that care. That Sanders makes a choice in this process does not negate the possibility that the complained-of conduct forced this choice on him as the lesser

evil. Note what we are *not* saying. We do not conclude that all threats of self-harm by mentally ill prisoners permit them to proceed *in forma pauperis*. Our conclusion, rather, is that the potential self-harm that Sanders alleges may well be caused by the complained-of conduct.

Having found that Sanders has made a plausible allegation of imminent, serious physical harm, we must remand for further proceedings to determine whether the allegation is true. The court cannot disregard the allegation as self-serving, but neither must the court accept whatever a prisoner says. See, e.g., *Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1172–73 (7th Cir. 2010); *Taylor*, 623 F.3d at 485–86.

A complaint's allegations are just that: allegations. To avoid the three-strikes rule of §1915(g), the complaint must allege imminent, serious physical harm. This Sanders has done. But if a claim is challenged by the defense, or seems fishy to the judge, it must be supported by facts presented in affidavits or, if appropriate, hearings. This is how allegations of jurisdiction are handled. A plaintiff who alleges injury caused by the defendant's conduct—an allegation essential to standing—must provide proof if challenged by the defendant or the judge. See, e.g., *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–62 (1992). Similarly, in litigation filed under the diversity jurisdiction of 28 U.S.C. §1332, a plaintiff's allegations about the parties' citizenship are accepted unless they are challenged or seem collusive, and then they must be proved. Determining the validity of allegations that a prisoner makes in an effort to avoid the three-strikes clause should proceed similarly.

If Sanders's allegations of imminent physical harm are untrue, then he must pay the whole filing fee promptly. *Tay-*

*lor*, 623 F.3d at 486. See also *Newlin v. Helman*, 123 F.3d 429 (7th Cir. 1997) (describing means to collect fees owed by prisoners who have struck out yet continue filing suits). And if it turns out that Sanders has lied in an effort to manipulate the judge, the case may be dismissed with prejudice as a sanction even if he comes up with the $400. See, e.g., *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 306–07 (7th Cir. 2002); *Ammons v. Gerlinger*, 547 F.3d 724, 725–26 (7th Cir. 2008).

Sanders has not yet been directed to substantiate his allegations. Once the defendants have been served with process and responded to the complaint, the district court should decide whether proof is necessary and, if it is, conduct appropriate evidentiary proceedings. Rule 12(b) of the Federal Rules of Civil Procedure was adopted before the enactment of §1915(g) in 1996, and neither that Rule nor any other specifies a procedure for resolving disputes about the requirements of §1915(g)—or, indeed, any other issue relevant to litigating *in forma pauperis*, such as a dispute about the plaintiff's available assets. Until the Civil Rules make specific provision for this issue, questions should be handled the same way judges resolve disputes about jurisdiction or venue, with hearings and findings of fact under Rule 12(b)(1), Rule 12(b)(2), and Rule 12(b)(3).

The judgment is vacated, and the case is remanded for proceedings consistent with this opinion.