In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2065

KELLY D. EBMEYER,

*Plaintiff-Appellant*,

*v.*

ADAM BROCK, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:16-cv-04056-SEM-TSH — **Sue E. Myerscough**, *Judge.*

ARGUED NOVEMBER 13, 2020 — DECIDED AUGUST 25, 2021

Before FLAUM, ROVNER, and BRENNAN, *Circuit Judges*.

ROVNER, *Circuit Judge*. Kelly D. Ebmeyer sued several
prison officials under 42 U.S.C. § 1983, alleging violations of
the Eighth Amendment. The district court ultimately dismissed
the suit with prejudice as a sanction for Ebmeyer's litigation
conduct related to his attempts to identify one of the prison
employee defendants. Because the court failed to make the

necessary findings to support this sanction, we vacate and remand for further proceedings. We also affirm the court's grant of summary judgment to other defendants.

**I.**

Ebmeyer was an inmate at Hill Correctional Center ("Hill") on April 16, 2014 when the Illinois Department of Corrections Special Operations Response Team (known as "Orange Crush") performed a facility-wide shakedown. Ebmeyer filed a lawsuit for actions purportedly taken against him during the shakedown. His complaint alleged that the Orange Crush team subjected him to a humiliating, unconstitutional strip search and excessive force, in violation of his Eighth Amendment rights and 42 U.S.C. § 1983. In addition to describing the manner in which the strip search was conducted, he asserted that an unidentified "John Doe" member of that team placed him in extremely tight handcuffs that caused him injuries; Sergeant Jeffrey Oelberg struck him with a baton, squeezed his testicles, and forced him to stand handcuffed and facing a wall in a stress position for more than three hours; and prison officials Joseph Yurkovich and Kevwe Akpore promulgated policies that encouraged the challenged unconstitutional conduct.[1] He sought declaratory relief, compensatory and punitive damages, medical and psychological care, costs, and an injunction prohibiting the Orange Crush team from engaging in such conduct against him in the future.

---

[1]    Akpore was the warden at Hill, and Yurkovich was the Chief of Operations for the Illinois Department of Corrections.

The district court ultimately granted summary judgment in favor of Yurkovich, Akpore, and Oelberg, finding that Ebmeyer had failed to exhaust his administrative remedies on his claims against these defendants. On Ebmeyer's remaining claim against the John Doe defendant related to the handcuffing injuries, the court initially allowed the claim to proceed and kept Akpore in the case in order to assist Ebmeyer in identifying the John Doe defendant. After Ebmeyer identified the unnamed defendant as Adam Brock, the court became aware that Ebmeyer had known from the beginning of the suit that the John Doe defendant's first name was "Adam," and the court issued an Order to Show Cause why it should not dismiss the case with prejudice for Ebmeyer's failure to disclose this identification information sooner. The court rejected Ebmeyer's ensuing explanation and dismissed the suit with prejudice. Ebmeyer appeals.

## II.

On appeal, Ebmeyer first asserts that the court erred in granting summary judgment to three defendants on exhaustion grounds because they failed to meet their burden of proving failure to exhaust, and because the court should have conducted a fact-finding hearing on the matter before ruling. Second, he contends that the court erred in dismissing his case with prejudice as a sanction because the court failed to make appropriate factual findings supporting this extreme sanction,

and because his conduct as a *pro se* litigant did not warrant such a sanction.[2]

**A.**

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner may not file a section 1983 suit with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirements apply to all of the claims raised by Ebmeyer, including his claims for excessive force. *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). This means that "if a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim." *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

Hill Correctional Center followed the grievance procedures set forth in the Illinois Administrative Code. *See* 20 Ill. Admin. Code § 504.810. The Code provides that prisoners "may file a written grievance on a grievance form that shall be made available in all living units. Grievances shall be addressed to his or her institutional counselor[.] … A grievance must be filed with the counselor or Grievance Officer in accordance

---

[2]  Ebmeyer also appealed the district court's dismissal of his claim for injunctive relief, but conceded in his reply brief that the claim is now moot because he has been released on parole.

with the procedures in this Subpart, within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." 20 Ill. Admin. Code § 504.810(a).

After the April 16, 2014 incident, Ebmeyer filed three grievances: (1) an April 16, 2014 grievance complaining that a bag of coffee was missing from his cell after the shakedown; (2) an April 18, 2014 grievance asserting that a towel was missing from his cell; and (3) a May 18, 2014 grievance complaining that Orange Crush placed him in extremely tight handcuffs during the shakedown despite his pleas to have them loosened, causing him pain, numbness, and abnormal touch sensations on his left wrist and thumb where he had previously had surgery. He also complained that he had been wrongfully charged $5 for a medical visit related to his wrist injuries from this incident. Notably, he did not file a grievance complaining about any conduct by Oelberg, Akpore or Yurkovich. The counselor who reviewed the grievances denied the property complaints, and found that the $5 charge for non-emergent care was appropriate.[3] Ebmeyer appealed all three denials to the grievance officer, and all were denied again. He then appealed the tight handcuffs claim to the Director of the Illinois Department of Corrections, who denied it as well. Ebmeyer then filed this suit in federal court.

When Oelberg, Akpore and Yurkovich sought summary judgment for failure to exhaust administrative remedies, Ebmeyer, who was proceeding *pro se* in the district court,

---

[3] On the grievance form, under "Relief Requested," Ebmeyer sought, "#1 The $5 I was charged for the guards punishing me in a cruel and unusual way needs to be placed back in my account. #2 To be made whole."

responded that the grievance system was not "available" for his problem because he could "not get relief from the grievance system after being victimized." R. 31, at 3. He further explained that he "couldn't receive a remedy to not be abused by filing a grievance after it happened." In his attached affidavit, he asserted:

> According to the inmate manual, the first step in resolving a grievance is to communicate with an officer. … When Plaintiff tried resolving the grievance through the first course of action listed in our inmate manual by asking Sgt. Oelberg of the Orange Crush if this was necessary to have his baton between my legs, he struck me with the baton then squeezed my testicles. At this point, Plaintiff felt it was in his best interest to not further try to resolve the grievance with the controlling officer on duty. … I filed three grievances afterwards. I filed a verbal grievance and was beaten.

R. 31, at 6–7. On appeal, Ebmeyer characterizes this as uncontested testimony regarding the unavailability of the grievance process. He contends that he was not required to exhaust the grievance process because it was unavailable to him, citing *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013), for the proposition that the grievance process is not available to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy by filing a grievance. In the very least, he argues, the court should have held a hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir.

2008), to resolve disputes of fact regarding whether the grievance process was available to him.[4]

Ebmeyer correctly states that an inmate need only exhaust those remedies that are "available" under the prison's procedures. *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (excessive force claim not subject to the PLRA exhaustion requirement when no administrative remedies were "available" to the prisoner during the relevant exhaustion period). We review dismissals for failure to exhaust administrative remedies *de novo*. *Hernandez*, 814 F.3d at 840. "Administrative remedies are primarily 'unavailable' to prisoners where 'affirmative misconduct' prevents prisoners from pursuing administrative remedies." *Hernandez*, 814 F.3d at 842 (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)). For example, remedies are considered unavailable when a correctional officer tells the prisoner that he cannot file a grievance when in fact the prisoner can do so. *Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir. 2015). Remedies are also unavailable where the prisoner presents evidence that prison personnel denied him grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances. *Kaba v. Stepp*, 458 F.3d 678, 680, 686 (7th Cir. 2006). *See also Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedies unavailable where

---

[4] The government argues that Ebmeyer forfeited a claim that the grievance process was unavailable due to Oelberg's retaliatory action, contending that Ebmeyer did not raise this claim clearly before the district court. But a "document filed *pro se* is 'to be liberally construed,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and by that standard, Ebmeyer's filings in the district court adequately preserved the issue for appeal.

prison personnel refused prisoner access to required grievance forms).

Ebmeyer's claim fails on the facts here. When an inmate claims that the grievance process is unavailable because he fears reprisal, he must demonstrate that a person of "ordinary firmness" would have been deterred from filing a grievance in the circumstances alleged. *Schultz*, 728 F.3d at 621; *Kaba*, 458 F.3d at 684–85. This is an objective standard. No *Pavey* hearing was required here because, even if we assume that the facts are as Ebmeyer suggests, under the objective standard, no person of ordinary firmness would have been dissuaded from filing a grievance in these circumstances. Ebmeyer asserts that the inmate manual directed him to first take the matter up with an officer, and that his oral complaint to an officer (in this instance, his alleged abuser, Oelberg) resulted in further abuse, dissuading him from taking the complaint further. But prison procedures did not require Ebmeyer to take up his complaint with his abuser, as he clearly knew. Although he averred that he "felt it was in his best interest to not further try to resolve the grievance with the controlling officer on duty," the grievance procedure provided him a clear route around Oelberg, through his counselor, the grievance officer and the Director. The record indisputably demonstrates that Ebmeyer knew this was the procedure; he followed it in filing three other grievances for events that he alleged happened that very same day. No one told him he could not file a grievance or denied him the proper forms. No one threatened to harm him if he filed a grievance. The forms and the process were available to him, and he filed and litigated his other shakedown complaints in the prison system. Moreover, he fails entirely to

explain how he was dissuaded from filing a grievance against Akpore or Yurkovich. Because Ebmeyer failed to exhaust the grievance process on his claims against these three defendants, we affirm the district court's grant of summary judgment in their favor.

**B.**

Ebmeyer also contends that the district court erred in dismissing the remainder of his case as a sanction for his conduct in delaying the identification of the John Doe defendant who allegedly applied overly tight handcuffs to his wrists during the shakedown. In the grievance he filed on May 18, 2014, Ebmeyer identified this defendant simply as "Orange Crush" and "Orange Crush guard." In the operative complaint, he identified the wrongdoers on this claim as "I.D.O.C. Special Operations Response Team (SORT) AKA Orange Crush," and as "Unknown members of Orange Crush." The district court ruled that Ebmeyer had exhausted administrative remedies for his excessive force claim against the John Doe Orange Crush officer and retained Warden Akpore as a defendant "for purposes of identifying the John Doe Orange Crush officer." R. 33, at 7–8. The court granted Ebmeyer leave to file a motion to substitute the real name of the John Doe defendant within sixty days. Less than a month later, Ebmeyer moved to substitute the name of the real John Doe, but because he did not specify a name, the court denied the motion with leave to renew. The court told Ebmeyer that, if he renewed the motion, "he should provide as much information about the John Doe defendant as possible, including a physical description." The court also advised Ebmeyer that he could seek information about John Doe's identity through the discovery process.

Ebmeyer then filed a motion to compel responses to interrogatories seeking to identify John Doe, for appointment of counsel, and to substitute the name of the John Doe. This time, Ebmeyer described when and where (including his housing unit, wing, and cell) he encountered the unknown officer, noted that the Caucasian male officer was wearing tactical team attire with the face shield down as shown in an attached exhibit, and remarked that he was "probably as tall as the Plaintiff, 6 foot." Ebmeyer also asserted that, "Everything else on Defendant John Doe Orange Crush was purposely hidden, including his name tag." R. 37. The court denied the motion for counsel, accepted the description, and granted an extension of time to defendant Akpore to respond to discovery. A few months later, Ebmeyer again moved to compel answers to interrogatories. Akpore then supplied Ebmeyer with a roster of Orange Crush members working at the prison on the date of the shakedown, highlighting the names of officers who matched the physical description Ebmeyer had provided. In light of Akpore producing that list, the court denied Ebmeyer's motion to compel, and ordered Ebmeyer to substitute the real name of the defendant within thirty days. Within that time frame, on April 26, 2018, Ebmeyer moved to substitute the real name of the John Doe defendant, this time identifying him as Adam Brock, one of the people listed on Akpore's roster. The court granted the motion and ordered that Brock be served with the complaint.

Ten months later, the court, on its own initiative, issued an Order to Show Cause "why the Court should not impose sanctions, including dismissal, for Plaintiff's failure to disclose information relevant to the identification of the Doe Defen-

dant." R. 65. The court had learned how Ebmeyer had identified Brock as the Doe defendant from Ebmeyer's sworn response to an interrogatory, contained in an exhibit to Brock's motion for summary judgment. Ebmeyer explained in that response:

> The defendant was called Adam by others. I was provided 17 names by the defense of Orange Crush members at Hill C.C. that day. Only 1 was an "Adam." Therefore, through the process of elimination, I was able to deduce Mr. Brock. In fact, of over 50 names provided of Orange Crush members from other prisons, he was the sole Adam. Furthermore, I find it easier than normal to remember the name of someone that has hurt me.

R. 65, at 3 (quoting R. 59-2, at 1). Ebmeyer had also revealed in deposition testimony (which was also an exhibit to Brock's motion for summary judgment) that he had known Brock's first name since the date of the shakedown, April 16, 2014. He also testified that he did not provide the first name sooner because he "would have felt silly, embarrassed to just put down that Adam hurt me, Adam did this, Adam did that, not knowing [Adam's] last name." R. 65, at 4 (quoting R. 59-1, at 25). Finally, when asked why he did not reveal Brock's first name when the court directed him to provide as much information as possible about the Doe defendant, Ebmeyer replied

that he "didn't really feel that part was relevant." R. 65, at 4
(quoting R. 59-1, at 25).[5]

The court noted in the Order to Show Cause that it had
retained Akpore in the case to aid in identifying the John Doe,
and that the court relied on *pro se* plaintiffs to provide accurate
and full disclosure of relevant information to expedite the
resolution of claims and minimize the inconvenience to prison
officials providing assistance. The court stated that, when a
litigant frustrates a court's duties or otherwise perpetrates a
fraud in the course of litigation, the court was empowered to
impose sanctions, including dismissal or default. The court
remarked that Ebmeyer's statement that he was able to identify
Brock because he was the only person on the list named
"Adam" contradicted his statement that he thought the first
name was irrelevant. Moreover, Ebmeyer had suggested twice
in motions that he was unable to identify the Doe defendant
because members of Orange Crush actively concealed their
identities.

Ebmeyer, still proceeding *pro se*, responded to the Order to
Show Cause by explaining that he provided what he believed
was all the relevant information about John Doe, and that he
did not attempt to delay the litigation. He asserted that he gave
a physical description of the officer to the best of his ability in
response to the court's order, and that the Orange Crush
members covered their name badges and failed to leave
"shakedown slips" in his cell identifying themselves as they

---

[5] Ebmeyer further explained at his deposition that, when the court ordered
him to provide a "description" of the Doe defendant, he assumed the court
was asking for a physical description. R. 59-1, at 25.

are required to do. He explained that he did not know Brock's last name until he received the roster from Akpore. He also noted that, although no one left a shakedown slip in his cell, prison officials should have been able to identify Brock from a properly prepared slip, given Ebmeyer's description of the place and time he encountered the officer, including his housing unit, wing, and cell.

Due to a delay in receiving the response, the court ruled before Ebmeyer's response arrived. After noting that Ebmeyer had not replied within the allotted time, the court ruled that "sanctions are appropriate in this matter for the reasons stated in its previous Order." R. 66, at 1. Because Ebmeyer was proceeding *in forma pauperis*, the court further found that "any sanction short of dismissal would not be appropriate." R. 66, at 1–2. Without further comment, the court dismissed the case with prejudice. R. 66, at 2. Ebmeyer filed a Rule 59(e) motion to alter or amend the judgment, pointing out that he had in fact timely replied to the court's Order to Show Cause per the prison mailbox rule.

The Court then accepted Ebmeyer's timely filed response but declined to change the judgment. The court wrote that it had dismissed the claims with prejudice "as a sanction for his willful failure to disclose the first name of the Doe Defendant for almost two years." R. 74.[6] The court noted that the Order to Show Cause asked Ebmeyer to explain why he delayed the proceedings by withholding the first name for almost two

---

[6] Our review of the Order to Show Cause reveals no such finding of willful behavior by Ebmeyer. As we discuss *infra*, the court simply described possibly troubling circumstances and directed Ebmeyer to explain them.

years while "simultaneously insinuating that he could not possibly have known it." The court said that Ebmeyer's deposition testimony directly contradicted his argument that he disclosed Brock's name as soon as possible because he had in fact known Brock's first name since the day of the incident. Remarking that Ebmeyer's only reason for not providing the first name earlier was that he would have felt "silly" doing so, the court declined to amend its earlier order.

"[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). A court must find by a preponderance of the evidence that the responsible party acted (or failed to act) "with a degree of culpability that exceeds simple inadvertence or mistake before it may choose dismissal as a sanction for discovery violations." *Ramirez*, 845 F.3d at 776, 778. Moreover, sanctions imposed pursuant to the court's inherent authority "must be premised on a finding that the culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Ramirez*, 845 F.3d at 776. The court's inherent power to dismiss is "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Schilling v. Walworth County Park & Planning Commission*, 805 F.2d 272, 274–75 (7th Cir. 1986). "The sanction of dismissal with prejudice must be infrequently resorted to by district courts in their attempts to control their dockets and extirpate nuisance suits." *Schilling*, 805 F.2d at 275. Dismissal is a harsh sanction, and in general, "justice is dispensed by the hearing of cases on

their merits[.]" *Id*. We review exercises of the court's inherent authority to dismiss for abuse of discretion, and findings of fact for clear error. *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009). A decision that rests on an error of law is always an abuse of discretion. *United States v. Shelton*, 997 F.3d 749, 757 (7th Cir. 2021).

The court here made an error of law when it dismissed the case without finding that Ebmeyer willfully abused the judicial process or otherwise conducted the litigation in bad faith when he failed to reveal Brock's first name sooner. Nor did the court find that Ebmeyer acted or failed to act with a degree of culpability that exceeded simple inadvertence or mistake before it chose dismissal as a sanction. The court did not address Ebmeyer's explanations for why he failed to reveal the first name sooner. Finally, the court failed to consider any sanction short of dismissal, instead instituting a *de facto* rule that, in cases where the plaintiff proceeds *in forma pauperis*, dismissal is the only effective sanction.

In dismissing the case, the court stated that sanctions were appropriate "for the reasons stated in its previous Order." But the court had not stated reasons or factual findings in its previous Order to Show Cause. That Order had detailed circumstances that the court found troubling, namely, that Ebmeyer had known Brock's first name from the beginning of the suit; had failed to disclose it in the face of an order directing him to reveal all relevant information about the Doe defendant; had denied the relevance of the first name in apparent contradiction to his admission that he was able to identify Brock from the prison's roster because he was the only officer named "Adam;" and had claimed he lacked identifying information

because the officers actively concealed their identities when he knew the first name all along. Those circumstances certainly could indicate some level of misconduct but they could also be explained by mistake or inadvertence.

Trial courts must insure that the claims of a *pro se* litigant are given fair and meaningful consideration. *Schilling*, 805 F.2d at 277. A review of the course of the litigation indicates no apparent pattern of delay or contumacious conduct by Ebmeyer. Although he was incarcerated and appearing *pro se*, he appeared to have been complying with the court's orders and deadlines as the litigation progressed. Nor did Ebmeyer have any apparent incentive to delay the litigation or mislead the court. As the plaintiff, he had nothing to gain by delaying the identification of Adam Brock as the defendant who harmed him. Ebmeyer asserts that he simply misunderstood the court's order to provide descriptive information about the officer when he interpreted it as requiring only a physical description. It is also plausible on this record that he did not comprehend the relevance or importance of providing a first name until presented with a roster on which, coincidentally, only one person named "Adam" appeared. It would not be unusual for a *pro se* litigant to assume that the prison had a ready means of identifying the officer who participated in the shakedown of his cell, especially when provided with a physical description (as he understood the court to order), the timing of the encounter, and the place, including the housing unit, wing, and cell.

Moreover, there is not necessarily a contradiction in claiming that the officers actively hid their identities by covering their name badges and their faces with helmet

shields, and yet also admitting later that he heard another officer refer to his alleged abuser as "Adam." On the record as it currently stands, Ebmeyer's conduct is plausibly the result of misunderstanding, inadvertence or mistake as opposed to an indication of bad faith or a willful abuse of the judicial process. The court erred when it dismissed the case without finding that Ebmeyer acted (or failed to act) with a degree of culpability that exceeded simple inadvertence or mistake. Because the court failed to find that Ebmeyer willfully abused the judicial process or otherwise conducted the litigation in bad faith, we vacate and remand for proceedings consistent with this opinion.

Finally, we note that the "need for the district court to exercise discretion in deciding among alternative sanctions was especially great in this case, given the plaintiff's *pro se* status." *Schilling*, 805 F.2d at 277. Moreover:

> A litigant who appears *pro se* should not be treated more harshly for negligent errors than one represented by an attorney. … Otherwise, only those wealthy enough to be able to afford an attorney would be able to insulate themselves from the consequences of an occasional human error[.]

*Schilling*, 805 F.2d at 277 n.8. For a *pro se* prisoner proceeding *in forma pauperis*, a verbal or written warning, or a modest monetary sanction may have a sufficient effect. *Evans v. Griffin*, 932 F.3d 1043, 1048 (7th Cir. 2019) (dismissing a case with prejudice is one of the harshest sanctions a court can impose, and so courts must be especially careful before taking that step;

even in the case of an indigent prisoner for whom a high-dollar fine might be inappropriate, other sanctions are available: for example, a warning from the court, a small financial sanction, taking certain facts to be established in favor of the party that secured an order compelling discovery, or dismissal without prejudice). Moreover, sanctions, including dismissal, must be proportionate to the circumstances. *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). *See also Evans*, 932 F.3d at 1048 (the gravity of the misconduct must always inform the choice of sanction). "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Donelson*, 931 F.3d at 569. *See also Oliver v. Gramley*, 200 F.3d 465, 466 (7th Cir. 1999) (although dismissal with prejudice is a permissible judicial sanction for fraud on the court, the general rule is that before dismissing a suit with prejudice as a sanction for misconduct a court should consider the adequacy of a less severe sanction). It is not apparent from the court's order whether it considered any sanction other than dismissal.

Although we vacate and remand for proceedings consistent with this opinion, we do not mean to suggest any particular

result on remand. Further development of the record might support factual findings that would justify the sanction of dismissal.[7]

AFFIRMED IN PART;

VACATED AND REMANDED IN PART.

---

[7] We thank appointed counsel for their vigorous advocacy on Ebmeyer's behalf.